E-FILED
Friday, 28 January, 2022  03:00:11 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| SHERRY GAUL, individually and on behalf of all others similarly situated, | Case No. 1:21-cv-01314 -JES-JEH |
| Plaintiff, | Honorable Judge James E. Shadid |
| v. | Magistrate Judge Jonathan E. Hawley |
| TRUTH NOW LLC, | |
| Defendant. | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# TABLE OF CONTENTS

**PAGE(S)**

I.     INTRODUCTION .................................................................................1

II.    BACKGROUND ..................................................................................2

III.   ARGUMENT ......................................................................................5

    A.     The Court has Personal Jurisdiction Over Defendant. ...............................5

    B.     The Communications Decency Act Is Inapplicable to Defendant's Free Preview Advertisements. ..........................................................................6

    C.     Defendant's Use of Plaintiff's Identity Violates the IRPA....................................10

         1.     Defendant's use of Plaintiff's identity satisfies IRPA's "public use or holding out" requirement. ...........................................................11

         2.     Defendant's use of Plaintiff's identity to advertise its subscription service satisfies the IRPA's "commercial purpose" requirement. .........................13

         3.     The IRPA's (b)(2) and (b)(4) exceptions do not apply because Defendant's free previews have a specific commercial purpose and do not advertise material excepted by these provisions. .......................................15

    D.     The First Amendment Does Not Bar This Lawsuit. ...............................17

         1.     The First Amendment status of biographical information in Defendant's database is not at issue here. ..................................................17

         2.     The free previews are commercial speech that reference a specific product. .................................................................................19

         3.     As commercial speech, the free previews are subject to the limitations provided by IRPA. ........................................................21

    E.     IRPA Does Not Violate the Dormant Commerce Clause. ....................23

IV.   CONCLUSION..................................................................................25

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Advanced Tactical Ordnance Systems, LLC v. Ral Action Paintball, Inc.*,
  751 F.3d 796 (7th Cir. 2014) ................................................................. 5

*Dobrowolski v. Intelius, Inc.*
  2018 WL 11185289 (N.D. Ill. May 21, 2018) ............................................. 13, 14, 17

*Almeida v. Amazon*,
  456 F.3d 1316 (11th Cir. 2006) .............................................................. 14

*Am. Booksellers Found. v. Dean*,
  342 F.3d 96 (2d Cir. 2003).................................................................... 25

*Am. Civil Liberties Union v. Johnson*,
  194 F.3d 1149 (10th Cir. 1999) ............................................................. 25

*Am. Libraries Ass'n v. Pataki*,
  969 F. Supp. 160 (S.D.N.Y. 1997)........................................................... 25

*Bartnicki v. Vopper*,
  532 U.S. 514 (2001)........................................................................... 21

*Batzel v. Smith*,
  333 F.3d 1018 (9th Cir. 2003) ............................................................... 8

*Bd. of Trs. of State Univ. of N.Y. v. Fox*,
  492 U.S. 469 (1989)........................................................................... 20

*Blair v. Nev. Landing P'ship*,
  859 N.E.2d 1188 (Ill. App. Ct. 2006) ...................................................... 22

*Bolger v. Youngs Drug Prods. Corp.*,
  463 U.S. 60 (1983)............................................................................. 19, 20

*Bosley v. Wildwett.com*,
  310 F. Supp. 2d 914 (N.D. Ohio 2004)...................................................... 22

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)........................................................................... 6

*Callahan v. Ancestry.com Inc.*,
  2021 WL 783524 (N.D. Cal. Mar. 1, 2021)................................................ 6, 9

*Callahan v. PeopleConnect, Inc.*,
  2021 WL 5050079 (N.D. Cal. Nov 1, 2021) ............................................... 6

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) ........................................................... 10

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*,
  447 U.S 557 (1980) ................................................................... 21, 22

*Charles v. City of Los Angeles*,
  697 F.3d 1146 (9th Cir. 2010) ........................................................... 20

*Cher v. Forum Int 'l, Ltd.*,
  692 F.2d 634 (9th Cir. 1982) ........................................................... 20

*Chi. Lawyers' Comm. For Civil Rts. Under Law, Inc. v. Craigslist, Inc.*,
  519 F.3d 666 (7th Cir. 2008) ............................................................ 8

*Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*,
  149 F.3d 679 (7th Cir. 1998) ........................................................... 21

*Daly v. Viacom, Inc.*,
  238 F. Supp. 2d 1118 (N.D. Cal. 2002) ................................................... 20

*Dennis v. MyLife.Com, Inc.*,
  2021 WL 6049830 (D.N.J. Dec. 20, 2021) .................................................. 9

*Dobrowolski v. Intelius, Inc.*,
  2017 WL 3720170 (N.D. Ill. Aug. 29, 2017) ........................................... 15, 23

*Envt'l Def. Fund, Inc. v. Massey,*
  986 F.2d 528 (1993) .................................................................... 24

*Esch v. Univ. Pictures Co.*,
  2010 WL 5600989 (N.D. Ala. Nov. 2, 2010) ............................................... 20

*Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC,*
  521 F.3d 1157 (9th Cir. 2008) ...................................................... 7, 8, 9

*Ferguson v. Friendfinders, Inc.*,
  94 Cal. App. 4th 1255 (1st Dist. 2002) ................................................. 24

*FTC v. Accusearch Inc.*,
  570 F.3d 1187 (10th Cir. 2009) .......................................................... 7

*Gabiola v. Sarid,*
  2017 WL 4264000 (N.D. Ill. Sept. 26, 2017) ............................................. 18

*Gionfriddo v. Major League Baseball*,
  114 Cal. Rptr. 2d 307 (Cal. Ct. App. 2001) ............................................. 15

*Greater Los Angeles Agency on Deafness, Inc. v. CNN*,
  742 F.3d 414 (9th Cir. 2014) ........................................................... 25

*Groden v. Random House, Inc.*,
    61 F.3d 1045 (2d Cir. 1995)................................................................ 20

*Hadley v. Gatehouse Media Freeport Holdings, Inc.*,
    2012 WL 2866463 (N.D. Ill. July 10, 2012)............................................ 9

*Haynes v. Alfred A. Knopf, Inc.*,
    8 F.3d 1222 (7th Cir. 1993) ............................................................... 21

*Healy v. Beer Inst., Inc.*,
    491 U.S. 324 (1989).......................................................................... 24

*Henderson v. Source for Public Data*,
    2021 WL 2003550 (E.D. Va. May 19, 2021) ........................................... 9

*Huon v. Denton*,
    841 F.3d 733 (7th Cir. 2016) ............................................................... 7

*In re Facebook Biometric Info. Priv. Litig.*,
    2018 WL 2197546 (N.D. Cal. May 14, 2018) ............................. 23, 24, 25

*Jordan v. Jewel Food Stores, Inc.*,
    743 F.3d 509 (7th Cir. 2014) ......................................................... 19, 21

*Knapke v. PeopleConnect Inc.*,
    2021 WL 3510350 (W.D. Wash. Aug. 10, 2021) ............................... passim

*Kolebuck-Utz v. Whitepages Inc.*,
    2021 WL 1575219 (W.D. Wash. April 22, 2021) .............................. passim

*Krause v. RocketReach, LLC*,
    2021 WL 4282700 (N.D. Ill. Sept. 21, 2021) ................................... passim

*Lane v. Random House, Inc.*,
    985 F. Supp. 141 (D.D.C.1995) .......................................................... 20

*Lemmon v. Snap, Inc.*,
    995 F.3d 1085 (9th Cir. 2021) ............................................................. 7

*Lukis v. Whitepages Inc.*,
    454 F. Supp. 3d 746 (N.D. Ill. 2020) ............................................. passim

*Lukis v. Whitepages Inc.*,
    2020 WL 6287369 (N.D. Ill. Oct. 27, 2020)..................................... 19, 21

*Marshall's Locksmith Service Inc. v. Google, LLC*,
    925 F.3d 1263 (D.C. Cir. 2019) ........................................................... 8

*MaryCLE, LLC v. First Choice Internet, Inc.*,
    890 A.2d 818 (Md. Ct. Spec. App. 2006) .............................................. 24

*Monroy v. Shutterfly, Inc.*,
  2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) ........................................ 24

*N. Grain Mktg., LLC v. Greving*,
  743 F.3d 487 (7th Cir. 2014) .............................................................. 5

*Nieman v. Versuslaw, Inc.*,
  512 F. App'x 635 (7th Cir. 2013) ........................................................ 14

*Parker v. Google, Inc.*,
  422 F. Supp. 2d 492 (E.D. Pa. 2006) .................................................. 9

*Parker v. PayPal*,
  2017 WL 3508759 (E.D. Pa. Aug. 16, 2017) ........................................ 9

*PSINet, Inc. v. Chapman*,
  362 F.3d 227 (4th Cir. 2004) .............................................................. 25

*Rivera v. Google Inc.*,
  238 F. Supp. 3d 1088 (N.D. Ill. Feb. 27, 2017) .................................... 23

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir. 1989).............................................................. 14

*Sessa v. Ancestry.com Operations Inc.*,
  2021 WL 4245359 (D. Nev. Sept. 16, 2021) .............................. 1, 6, 11

*Siegel v. Zoominfo Techs., LLC*,
  2021 WL 4306148 (N.D. Ill. Sept. 22, 2021) .............................. passim

*SPGGC v. Blumenthal*,
  505 F.3d 183 (2d Cir. 2007)................................................................ 25

*State v. Heckel*,
  24 P.3d 404 (Wash. 2001).................................................................. 24

*Tamburo v. Dworkin*,
  601 F.3d 693 (7th Cir. 2010) ............................................................ 5

*Thompson v. Getty Images (US), Inc.*,
  2013 WL 3321612 (N.D. Ill. July 1, 2013).......................................... 14

*Toney v. L'Oreal USA, Inc.*,
  406 F.3d 905 (7th Cir. 2005) ............................................................ 15

*Trannel v. Prairie Ridge Media*,
  987 N.E. 2d 923 (Ill. App. Ct. 2013) ............................................ 12, 13

*U.S., ex rel. Osheroff v. HealthSpring, Inc.*,
  938 F. Supp. 2d 724 (M.D. Tenn. 2013).............................................. 12

*United States v. Benson*,
    561 F.3d 718 (7th Cir. 2009) ........................................................................ 19

*Vrdolyak v. Avvo, Inc.*,
    206 F. Supp. 3d 1384 (N.D. Ill. 2016) ...................................................... 16, 18

*Wollschlaeger v. Governor*,
    848 F.3d 1293 (11th Cir. 2017) .................................................................. 22

*Zacchini v. Scripps-Howard Broad. Co.*,
    433 U.S. 562 (1977) .................................................................................... 23

## STATUTES

47 U.S.C. § 230 ................................................................................................. 10

47 U.S.C. § 230(c)(1) ............................................................................. 1, 7, 8, 10

765 ILCS 1075/5 ............................................................................................... 10

765 ILCS 1075/30 ............................................................................................. 15

765 ILCS 1075/30(a) .................................................................................... 1, 10

765 ILCS 1075/35(b)(4) .................................................................................. 16

## OTHER AUTHORITIES

H.B. 1422, Tr. of House Debate, 90th Ill. Gen. Assem. (Apr. 24, 1997) ..................... 22

McCarthy, 1 Rights of Publicity and Privacy (2d ed.) ............................................ 15

Restatement (Third) of Unfair Competition (1995) ................................................. 15

## I.    INTRODUCTION

The Illinois Right of Publicity Act ("IRPA" or "the Act") prohibits the "use [of] an individual's identity for commercial purposes" without consent. 765 ILCS 1075/30(a). Inmatessearcher.com, the website operated by Defendant Truth Now LLC ("Defendant" or "Truth Now"), uses the identities of Illinois residents in free preview advertisements to promote its subscription services. Because these individuals never consented to this use of their identities, Plaintiff Sherry Gaul alleges that Defendant has violated her and others' rights under the Act. Multiple courts have already examined virtually identical allegations and concluded that the conduct alleged here is "a textbook example . . . of using a person's identity for a commercial purpose." *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 760 (N.D. Ill. 2020), *reconsideration denied*, 2020 WL 6287369 (N.D. Ill. Oct. 27, 2020) (Feinerman, J.); *Krause v. RocketReach, LLC*, 2021 WL 4282700 (N.D. Ill. Sept. 21, 2021); *Siegel v. Zoominfo Techs., LLC*, 2021 WL 4306148 (N.D. Ill. Sept. 22, 2021); *accord Kolebuck-Utz v. Whitepages Inc.*, 2021 WL 1575219 (W.D. Wash. April 22, 2021) (applying Ohio's right of publicity statute, analogous to IRPA); *Knapke v. PeopleConnect Inc.*, 2021 WL 3510350 (W.D. Wash. Aug. 10, 2021) (same); *Sessa v. Ancestry.com Operations Inc.*, 2021 WL 4245359 (D. Nev. Sept. 16, 2021) (applying Nevada's right of publicity statute, analogous to IRPA). The arguments advanced by Defendant's motion to dismiss (the "Motion" or "Mot.") tread no new ground. They should all be rejected.

First, Defendant argues that the Court lacks personal jurisdiction over it. But Defendant ignores the close connections between Plaintiff's claims and Defendant's Illinois-based conduct.

Second, Defendant seeks refuge under the Communications Decency Act, 47 U.S.C. § 230(c)(1) (the "CDA"), because it obtains its data elsewhere. The argument is full of holes; *Defendant* specifically—not any third party—chose to find, use, and place Plaintiff's identifying

1

information in ads for its own subscription services. Because its website is not a passive conduit for disseminating actionable material, Defendant is not immune under the CDA.

Third, Defendant says Plaintiff's claims fail because (i) Plaintiff fails to plead a prima facie IRPA claim, and (ii) Defendant is immune from suit under the IRPA's statutory exemptions. Defendant is wrong. The element- and exception-based arguments fail because they do not track the pleadings, which concern Defendant's *advertising*, not the content of its databases.

Fourth, Defendant says its conduct is protected under the First Amendment. But Defendant improperly focuses on the status of information in its databases (which is not even part of the record) and offers nothing suggesting that its advertisements are not regulable under the IRPA as commercial speech.

Fifth, Defendant suggests the IRPA violates the Dormant Commerce Clause because applying it would effectively regulate conduct outside of Illinois. But the argument is premature and without support: courts regularly enforce Illinois' consumer protection laws against online businesses in cases where, like here, a lawsuit addresses Illinois-based conduct.

The Motion should be denied in its entirety.

## II.    BACKGROUND

Defendant sells subscription access to information about individuals on inmatessearcher.com ("InmatesSearcher"). (Class Action Complaint, dkt. 1 ("Compl.") ¶ 1-2, 10-13.) Defendant compiles and generates the content it sells on its website and the advertising at issue here. (*Id.* ¶¶ 14, 17.)

When a non-subscriber visits InmatesSearcher and searches for an individual by first and last name, the site displays a list of "free previews" of individuals found within its records that have the same name. (*Id.*¶¶ 3-5.) Each free preview contains an individual's name and other

uniquely identifying information, such as age, location, and family member names. (*Id.* ¶ 5.)



(*Id.*; Figure 1.) Once a consumer clicks "View Report," the site takes a user through several subsequent screens that tout the amount of information accessible on Defendant's website. (*Id.* ¶ 6.) Those screens also explain that after a report is ultimately purchased, users will be able to "look up anyone else in your life!" (*Id.*) Next, Defendant's website displays another free preview advertisement using the searched individual's name and other identifying information. (*Id.* ¶ 7.)



(*Id.*; Figure 2.) On this page, a user is encouraged to enter personal details and click forward, which introduces Defendant's pay screen. (*Id.* ¶ 8.)

3



(*Id.*; Figure 3.) There is no option or ability, as Defendant implies, (Mot. at 1) to purchase a report about an individual without concurrently subscribing to Defendant's subscription services, *see* (Compl., Figure 3.) Nor did Defendant obtain consent, written or otherwise, before using any individual's name or information in the free preview advertisements. (*Id.* ¶¶ 16, 27, 40.) Plaintiff filed this lawsuit after she discovered that her identifying information was used on the InmatesSearcher website in this fashion. (*Id.* ¶¶ 24-30.)

### III.    ARGUMENT

#### A.    The Court has Personal Jurisdiction Over Defendant.

Defendant's jurisdictional challenge fails. Mot. at 3-5. Specific personal jurisdiction is appropriate where "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014). "The exercise of specific jurisdiction must also comport with traditional notions of fair play and substantial justice." *Id.*

The requirements are easily met here. First, purposeful direction is satisfied: Plaintiff alleges that Defendant actively seeks out and compiles private and public records regarding Illinois residents, (Compl. ¶¶ 14, 17), identifies Illinois residents in its search results and profiles them in free previews, (*id.* ¶¶ 5-9, 17), and sells monthly subscriptions for access to those records, including to consumers in Illinois (*id.* ¶¶ 10, 11-13, 18). These actions are the exact type of "intentional contacts" with Illinois "required for the exercise of specific jurisdiction." *Lukis*, 454 F. Supp. 3d at 757 (finding personal jurisdiction over defendant on substantially similar facts); *Tamburo v. Dworkin*, 601 F.3d 693, 706 (7th Cir. 2010) (finding personal jurisdiction where the defendants were "alleged to have published [tortious] statements about [the plaintiff], either on their public websites or in blast emails to other[s]"). Defendant cites *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, to argue that "operating a website that is accessible in the forum state but does not specifically target the forum state, does not create personal jurisdiction." (Mot. at 3 (citing 751 F.3d 796, 801-03 (7th Cir. 2014)).) But unlike that case, where the defendants were only "alleged to have placed infringing content on its interactive website," here, Defendant is "alleged to have engaged in repeated, intentional conduct directed at Illinois

and its residents—using their personal information . . . to advertise its subscription services." *Lukis*, 454 F. Supp. 3d at 758 (distinguishing *Advanced Tactical*).

Next, Plaintiff's injury arises from Defendant's forum-related activities, as she alleges harm stemming from Defendant's Illinois-based conduct. *Id.* at 759.

Finally, the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. Plaintiff alleges unlawful activity directed toward Illinois, making Illinois a convenient and effective forum for relief and for resolving the controversy involving Illinois residents, and Illinois has a "strong interest in providing a forum for its residents . . . to seek redress for [] injuries suffered within the state and inflicted by out-of-state actors." *Id.* (citation omitted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (discussing criteria).

### B.   The Communications Decency Act Is Inapplicable to Defendant's Free Preview Advertisements.

Defendant claims that it is immune from suit under the CDA because its website is a publisher of "information … provided by other content providers - not Truth Now." (Mot. at 7 (emphasis omitted).) This argument has been rejected by nearly every court to consider it, including by every federal court in this Circuit.[1] *Krause*, 2021 WL 4282700, at *4 (addressing nearly identical facts and holding that "[t]hese allegations . . . do not establish that the Communications Decency Act shields defendants from liability under the IRPA"); *Lukis*, 454 F. Supp. 3d at 763 (same); *Kolebuck-Utz*, 2021 WL 1575219, at *3 (rejecting CDA protection); *Knapke*, 2021 WL 3510350, at *3-4 (same); *Ancestry.com*, 2021 WL 4245359, at *9-10 (same). It

---

[1]    Defendant cites *Callahan v. Ancestry.com Inc.*, 2021 WL 783524 (N.D. Cal. Mar. 1, 2021). (Mot. at 6, 8.) But more recent case law addressing the website of one of Defendant's competitor companies (PeopleConnect, Inc.) shows the decision's CDA analysis takes a minority—and erroneous—position. *Callahan*, 2021 WL 5050079, at *5 (discussing case and noting that "other district courts have reached differing conclusions on CDA immunity in similar cases" before rejecting CDA defense).

fails here too.

"[T]he CDA applies to online forums serving as 'a mere passive conduit for disseminating [actionable] statements.'" *Lukis*, 454 F. Supp. 3d at 763 (quoting *Huon v. Denton*, 841 F.3d 733, 742 (7th Cir. 2016)). Other circuits agree. The Ninth Circuit explained in *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC* that:

> A website operator can be both a service provider and a content provider: If it passively displays content that is created entirely by third parties, then it is only a service provider with respect to that content. But as to content that it creates itself, or is 'responsible, in whole or in part' for creating or developing, the website is also a content provider. Thus, a website may be immune from liability for some of the content it displays to the public but be subject to liability for other content.

521 F.3d 1157, 1162-63 (9th Cir. 2008) (en banc); *accord Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1087 (9th Cir. 2021) ("[B]ecause the [plaintiff's] claim neither treats [defendant] as [the] 'publisher or speaker' nor relies on 'information provided by another information content provider,' [defendant] does not enjoy immunity from this suit under § 230(c)(1).").

Defendant is not immune because it is "responsible, in whole or in part" for creating or developing the free previews. *Roommates.com* holds that "development" refers to "augmenting the content" or "materially contributing to its alleged unlawfulness." 521 F.3d at 1167-68. Similarly, the Tenth Circuit has held that "neutral tools" are entitled to protection under the CDA, but if a company plays a role in generating the content—*e.g.*, by "solicit[ing] requests" for information and then transforming it into "a publicly available commodity"—there is no immunity. *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1198-1201 (10th Cir. 2009). The Seventh Circuit reached a similar result in *Huon* where it held that the CDA did not protect the defendant from liability where it "edited, shaped, and choreographed" the content of the comments it published online. *See Lukis*, 454 F. Supp. 3d at 763 (citing *Huon*, 841 F.3d at 742). These cases show that the CDA is not an obstacle to suit here. Crucially, the free previews would not appear without Defendant's

decision to generate the content in the first place. As was the case in *Lukis*, Defendant is "alleged to have actively compiled and collated, from several sources, information regarding" Plaintiff and others. *Id.*; *accord Krause*, 2021 WL 4282700, at *4; *Kolebuck-Utz*, 2021 WL 1575219, at *3. And Defendant's decision to program the free previews to display names and other curated identifying information is *the* source of the advertisements' unlawfulness. Thus, Defendant is an "information content provider" of the content at issue in this case—and so the CDA should not apply. 47 U.S.C. § 230(c)(1); *Chi. Lawyers' Comm. For Civil Rts. Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008) (CDA does not apply where a defendant is responsible for the creation of the allegedly unlawful content).

Nothing raised by Defendant suggests a different outcome. Generally, Defendant says that its website only publishes "information from other sources." (Mot. at 7 (emphasis omitted).) But again, Plaintiff alleges that it is *Defendant*—not some third party—that creates the free preview advertising at issue here. Thus, even if Defendant's databases contained only information sourced from third parties, there are no allegations that those third parties "provided" the information to Defendant "for posting online," particularly in a way that would run afoul of IRPA. *Roommates.com*, 521 F.3d at 1171 (where a defendant "is the one making the affirmative decision to publish, . . . he contributes materially to [the information's] allegedly unlawful dissemination . . . [and] is thus properly deemed a developer and not entitled to CDA immunity") (citing *Batzel v. Smith*, 333 F.3d 1018, 1033 (9th Cir. 2003)). These facts readily distinguish the cases upon which Defendant relies – in every case that Defendant cites, the challenged content was itself created by another party and the defendant acted, at most, in an editorial or publisher function. *See Chicago Lawyers' Comm. For Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008) (CDA bars claims against Craigslist under Fair Housing Act for ads placed on the website

by users); *see also Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1268 (D.C. Cir. 2019) (CDA bars claims against search engines for populating webpages); *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 501 (E.D. Pa. 2006) (same); *Callahan*, 2021 WL 783524 (CDA bars claim based on the sale of third-party yearbooks); *Parker v. PayPal*, 2017 WL 3508759, at *7 (E.D. Pa. Aug. 16, 2017) (CDA bars claims against online marketplace for hosting a third party's misappropriation of the plaintiff's work); *Hadley v. Gatehouse Media Freeport Holdings, Inc.*, 2012 WL 2866463, at *2 (N.D. Ill. July 10, 2012) (CDA bars claims against website host that allows readers to post comments).

The same holds for the two recent FCRA cases Defendant identifies. In each, the plaintiff sought to hold a defendant liable for the inaccuracy of third-party content posted on its website, and, in each case, the district court found that the CDA provided immunity. *Henderson v. Source for Public Data* No. 3:20-CV-294-HEH, 2021 WL 2003550, at *6 (E.D. Va. May 19, 2021) (CDA bars claims against website where "Plaintiffs treat Defendants as if they are the publisher and distributer of third-party content" rather than the creator of the challenged content); *Dennis v. MyLife.Com, Inc.*, No. 20-CV-954, 2021 WL 6049830, at *6 (D.N.J. Dec. 20, 2021) (same, where plaintiffs challenged background reports themselves, rather than advertising for a subscription service to background reports.). But here, Plaintiff's claim focuses on the advertisements Defendant (and not any third party) created for its subscription service. Thus, even if Defendant's database uses information "provided by 'another information content provider'" (and, as in *Henderson* or *Dennis*, might insulate Defendant from a lawsuit attacking the accuracy of that database's content), the allegations at issue here, "on their face, do not establish that the [CDA] shields defendants from liability under the IRPA." *Krause*, 2021 WL 4282700, at *4 (citing *Lukis*, 454 F.3d at 1171); *see also Roommates.com*, 521 F.3d at 1171. Because Defendant developed the

content for its website and constructed it in a way that made the free preview ads unlawful—rather than merely providing a forum on which *other* parties could post or supply content that is not otherwise augmented—Defendant's cases do not apply here. *Krause*, 2021 WL 4282700, at *4.

Defendant additionally suggests that Section 230 applies because information is only displayed in response to a user's search, and thus "Plaintiff . . . was the one who entered the name in the Truth Now website and was also the one who 'provides the essential published content.'" Mot. at 8 (quoting *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003)). This argument misreads the CDA. The "information provided by another information content provider" refers to the unlawful content itself, not a user search causing the display of unlawful content. *See* 47 U.S.C. § 230(c)(1). Each of Defendant's CDA-based arguments fail.

### C.    Defendant's Use of Plaintiff's Identity Violates the IRPA.

The IRPA provides that "[a] person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent . . . ." 765 ILCS 1075/30(a). An individual's "identity" includes "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener[.]" 765 ILCS 1075/5. A "commercial purpose" includes the "public use or holding out of an individual's identity . . . on or in connection with the offering for sale . . . of . . . services." *Id.*

Multiple courts have applied these elements to fact patterns almost identical to those alleged here. All have reached consistent results. In *Lukis*, the court considered two people-search websites that, like the website at issue here, provided visitors with "free previews" of information in their online databases. Each preview contained identifying information of a searched-for individual, purporting to display some, but not all, information from the defendants' databases. 454 F. Supp. 3d at 752-55. The previews also included hyperlinks that led to a new webpage

10

prompting visitors to buy "monthly subscription[s] [that let a] subscriber . . . view background reports of persons in [the defendants' databases]." *Id.* at 755. The *Lukis* court held that this was "a textbook example under the IRPA of using a person's identity for a commercial purpose." *Id.* at 760; *see also Krause*, 2021 WL 4282700, at *1 (addressing nearly identical allegations and concluding that, to establish an IRPA claim, "[n]othing more is required at this stage"); *Siegel*, 2021 WL 4306148, at *4 (same). Other federal courts have reached the same conclusion under Ohio and Nevada's right of publicity statutes, which are similar to Illinois'. *Kolebuck-Utz*, 2021 WL 1575219, at *2 ("Here, Plaintiff's complaint clearly alleges that Defendant displayed Plaintiff's name and identifying information on its website, in what has been described as a free preview, as an enticement to purchase Defendant's subscription service."); *Knapke*, 2021 WL 3510350, at *5 ("Knapke has stated a claim under the Right of Publicity Law."); *Ancestry.com*, 2021 WL 4245359, at *6 (observing that the plaintiffs' allegations "indicate that Ancestry has used Plaintiffs' likeness for commercial purpose").

The same result is warranted here. Exactly like *Lukis*, *Krause*, *Siegel*, *Knapke*, *Kolebuck-Utz*, and *Ancestry.com*, Plaintiff alleges that Defendant's free previews use her identity to entice visitors to purchase a InmatesSearcher subscription. (Compl. ¶ 12.) Plaintiff never consented to that use. (*Id.* ¶ 27.) As Judge Feinerman held in *Lukis*, these allegations present "a textbook example" of an IRPA violation. *Lukis*, 454 F. Supp. 3d at 760 (collecting cases).

Defendant offers no real response to any of these decisions. Instead, it says dismissal is warranted because (i) Plaintiff fails to plead a prima facie IRPA claim, and (ii) Defendant is immune from suit under the IRPA's statutory exemptions. Each of these arguments fails.

## 1.    Defendant's use of Plaintiff's identity satisfies IRPA's "public use or holding out" requirement.

Defendant contends that there are no allegations of a "public use or holding out" of

11

Plaintiff's identity, because Plaintiff does not allege "that anyone actually ever searched her name or viewed her' free preview' on the Truth Now Website." (Mot. at 11.) This fails on multiple fronts: Plaintiff alleges facts satisfying the IRPA's public use *and* holding out requirements. *See Siegel*, 2021 WL 4306148, at *4 (rejecting similar argument).

First, a public use is alleged because Defendant displayed Plaintiff's information on InmatesSearcher. IRPA does not define "public use," but "the word 'public' is unambiguous and means the 'aggregate of the citizens' or 'everybody' or the 'people at large' or the 'community at large.'" *Trannel v. Prairie Ridge Media*, 987 N.E. 2d 923, 929 (Ill. App. Ct. 2013). Defendant's website was accessible by anyone with an Internet connection. "[M]any court[s] have held that information on readily accessible public websites constitutes public disclosure." *U.S., ex rel. Osheroff v. HealthSpring, Inc.*, 938 F. Supp. 2d 724, 732–33 (M.D. Tenn. 2013) (collecting cases). Defendant suggests "public use" allegations require that Plaintiff specifically allege an "actual dissemination to a third party[.]" (Mot. at 11.) But as with any case concerning Internet content— which, by its nature, is *only* ever provided upon a user's request—it is impossible without discovery to allege specifically *who* viewed Defendant's content. At this stage, the *publicly* accessible nature of Defendant's advertising satisfies the element. *See Siegel*, 2021 WL 4306148, at *4; *Krause*, 2021 WL 4282700, at *1.

Defendant's use of Plaintiff's identity also meets IRPA's "holding out" requirement. The Act doesn't define "holding out," but the "only applicable dictionary definition of 'hold out' is 'to make out to be: represent.'" *Trannel*, 987 N.E. 2d at 930 (quoting Webster's Third New Int'l Dictionary 1079 (1993)). *Trannel* is illustrative. There, the defendant used the plaintiff's photo on a media kit that was delivered to a few dozen individuals and businesses. *Id.* at 929. There were no allegations that recipients of the kit "viewed" the plaintiff's photo, but that didn't matter;

because the defendant used the plaintiff's photo for inclusion on the kit, the "defendant was representing, or holding out, plaintiff's . . . identit[y]" with a commercial purpose. *Id.* at 930. The same holds here. Defendant programmed its website to retrieve *specific* information about Plaintiff, display it to website visitors, and generate subscription purchases. (Compl. ¶¶ 28, 32.) As in *Trannel*, that demonstrates the "holding out" of Plaintiff's identity.

### 2. Defendant's use of Plaintiff's identity to advertise its subscription service satisfies the IRPA's "commercial purpose" requirement.

Defendant next contends that because the IRPA requires allegations that an identity be used "on or in connection with the offering for sale . . . of a product," there is no liability because "Truth Now did not use [Plaintiff's] identity to promote a product separate and distinct from the 'free preview' itself." (Mot. at 11-13.) The argument turns on right of publicity cases finding that images of a product may be used to sell the product itself (like, for example, a photo of a book to sell that book). But it does not apply here because Plaintiff's identity is used to sell subscriptions to a database, not a picture, book, or report.[2]

Judge Kocoras's comparison of *Dobrowolski* against *Lukis* is instructive. *Siegel*, 2021 WL 4306148, at *2-3. In *Dobrowolski*, the defendants sold informational reports about individuals. 2018 WL 11185289, at *1. To sell the reports, the defendants used online ads that incorporated searched-for names. *Id.* (citation omitted). Once clicked on, a subsequent page would give more details on the featured individual and the contents of their individual report, which could be purchased. *Id.* at *3. Thus, the *Dobrowolski* court "concluded the plaintiffs failed to state a claim

---

[2]    Defendant twists the pleadings when it says "Plaintiff does not allege that Truth Now used her identity for a separate product that does not include the information at issue[, r]ather, she alleges that Truth Now uses its free previews to advertise subscription services, which include the *very information* in the free previews." (Mot. at 14 (citing Compl. ¶¶ 5-10).) This is inaccurate. There is no way to purchase individual reports without concurrently signing up for the "Unlimited Search" subscription offered by Defendant. (Compl. ¶ 8; Figure 3.)

under IRPA because "[t]he plaintiffs' identities [were] not used to promote a separate product—[but were] used because plaintiffs' identities are part of the product offered for sale[, which] is not a commercial purpose as defined by the statute." *Siegel*, 2021 WL 4306148, at *2–3 (quoting *Dobrowolski*, 2018 WL 11185289, at *3). Judge Kocoras contrasted *Dobrowolski*'s facts with those at issue in *Lukis*, where, like here, website visitors could search for a specific individual and were then offered a number of "monthly subscription packages," which would let "the subscriber . . . view background reports of persons in Whitepages's [online] database. . . ." *Id.* (citing *Lukis*, 454 F. Supp.3d at 751). As Judge Kocoras summed up:

> *Lukis* distinguished *Dobrowolski* by pointing out the defendants in *Dobrowolski* were using the free previews to advertise only background reports regarding the person identified in the preview, whereas in *Lukis*, the defendants used the plaintiffs' identities to advertise a monthly subscription service giving the purchaser access to background reports on anyone in the defendants' databases. Thus, the plaintiff's identity "was not part and parcel of the entire product or service being advertised, meaning that Whitepages's use of her identity had a commercial purpose even on *Dobrowolski's* understanding of Section 30(a)" of IRPA.

*Id.* (citing *Lukis*, 454 F. Supp. 3d at 760-61) (internal citations omitted).

Here, the case is on all fours with *Lukis*, *Siegel*, and *Krause*: Plaintiff alleges that her identity is used to solicit the purchase of a subscription to Defendant's website and—unlike *Dobrowolski* and the other cases cited in Defendant's motion, *see Thompson v. Getty Images (US), Inc.*, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013) ("The Court is unpersuaded that showing a buyer a photograph of a person that she is considering whether to buy qualifies as a 'commercial purpose' as the IRPA uses that term."); *Nieman v. Versuslaw, Inc.*, 512 F. App'x 635 (7th Cir. 2013) (search results/reports sold a la carte); *Almeida v. Amazon*, 456 F.3d 1316, 1326 (11th Cir. 2006) (holding Amazon's display of a book cover depicting plaintiff was not use for a commercial purpose under Florida's commercial misappropriation statute.); *Rogers v. Grimaldi*, 875 F.2d 994,

1004 (2d Cir. 1989) (analyzing Oregon right of publicity law regarding use of a celebrity's name in a movie title)[3]—her identity is therefore "not part and parcel of the entire product or service being advertised." *Lukis*, 454 F. Supp. 3d at 761. Accordingly, the requisite commercial purpose is alleged.

Defendant's argument that IRPA requires a "suggestion to the public that a consumer promoted or endorsed a product" similarly holds no weight. Mot. at 11. This argument was explicitly rejected by the *Dobrowolski* court. *See Dobrowolski v. Intelius, Inc.*, 2017 WL 3720170, at *8 (N.D. Ill. Aug. 29, 2017) ("Under IRPA, a defendant may not use a plaintiff's identity for a commercial purpose. 765 ILCS 1075/30. IRPA does not require that the commercial purpose be an apparent endorsement of the defendant's product or service. . . . Using a person's identity merely to draw attention to a product or advertisement is an infringement.") (citing *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005); McCarthy, 1 Rights of Publicity and Privacy § 5:19 (2d ed.)); *see also* Restatement (Third) of Unfair Competition § 47 (1995) (recognizing for a right of publicity claim, "[p]roof that prospective purchasers are likely to believe that the identified person endorses or sponsors the user's goods or services is not required for the imposition of liability"). Thus, Defendant's use of Plaintiff's identity to promote its subscription services readily evidences a commercial purpose.

### 3.   The IRPA's (b)(2) and (b)(4) exceptions do not apply because Defendant's free previews have a specific commercial purpose and do not advertise material excepted by these provisions.

Defendant seeks refuge under IRPA's Section 35(b)(2) exception, arguing that its "free

---

[3]      Defendant additionally cites *Gionfriddo v. Major League Baseball*, but this case did not involve any analysis whatsoever of the "commercial purpose" prong of the right of publicity statute it analyzed. *See Gionfriddo v. Major League Baseball*, 114 Cal. Rptr. 2d 307, 318 (Cal. Ct. App. 2001) (affirming dismissal of claim under California right of publicity statute under that statute's "news, public affairs, or sports broadcast" exemption).

previews" use Plaintiff's identity for "non-commercial purposes, including any news, public affairs, or sports broadcast or account, or any political campaign." (Mot. at 14.)

This same tactic was rejected in *Lukis* and *Krause*. In both cases, the defendant argued that its database and constituent "background reports" involve "public affairs" and "reflect a matter of public concern." *Lukis*, 454 F. Supp. 3d at 762 (quotations omitted). This argument fails because this case addresses the free previews as advertisements for Defendant's subscriptions rather than the underlying data in the reports themselves. Each free preview, along with the information displayed, is connected to an offer for a commercial transaction. *See Lukis*, 454 F. Supp. 3d at 762 ("Defendants' invocation of Section 35(b)(2) forgets that Plaintiffs' claims are directed towards the free previews[.]"); *accord Krause*, 2021 WL 4282700, at *2. And because the previews serve a "commercial purpose" under Section 30(a) to sell subscription services, they "necessarily . . . do not serve a 'non-commercial purpose'" under Section 35(b)(2). *Lukis*, 454 F. Supp. 3d at 762 (citation omitted); *see also supra* § III(C)(2).[4]

Defendant also attempts to apply the IRPA's (b)(4) exemption barring claims involving "promotional materials, advertisements, or commercial announcements for a use described' under paragraph (b)(4).'" (Mot. at 14.) This is a misstatement of the statute. IRPA's (b)(4) exemption actually applies to uses "described under paragraph (1), (2), or (3) of this subsection[,]" none of which apply here. *See* 765 ILCS 1075/35 (b)(4). Defendant does not argue that IRPA's (b)(1) or (b)(3) exemptions apply. And as discussed above, the reports are not 35(b)(2) excepted material. But even if they were, this argument fails for three reasons. First, Plaintiff alleges that the free previews advertise Defendant's subscriptions, not individual reports; thus, whether the reports fall

---

[4]     Defendant's arguments that the "free previews" are non-commercial speech (Mot. at 14, citing *Vrdolyak v. Avvo, Inc.*, 206 F. Supp 3d 1384, 1388 (N.D. Ill. 2016)) are further addressed *infra* § III(D)(1).

under the (b)(2) exception is irrelevant. Second, Defendant's subscription service is nothing like a "non-commercial" news report or broadcast. And third, even if the free previews did advertise individual background reports (which are not for sale), it would be improper to resolve whether they are excepted material because there is nothing pleaded describing their contents. *See Lukis*, 454 F. Supp. 3d at 763 (refusing to decide this issue because the record did not "include an example or full description of a background report"); *see also Krause*, 2021 WL 4282700, at \*2 (finding plaintiff's "allegations do not establish an affirmative defense under Section 35(b)(2).").

Finally, Defendant argues "Plaintiff [cannot] show a commercial purpose because the free preview is 'part of the product'—the subscription—'offered for sale.'" (Mot. at 15 (quoting *Dolobrowki*, 2018 WL 11185289, at \*3).) This argument fails for the same reasons discussed above: even if previews of reports have a direct relation to the consumers they report on, the relation between Plaintiff's single record and Defendant's subscriptions—which allow access to thousands, if not millions, of data entries about individuals—is negligible. *See supra* § III(C)(2) (citations omitted).

**D.    The First Amendment Does Not Bar This Lawsuit.**

Defendant next suggests that the First Amendment exempts it from liability. (Mot. at 16-20.) Once again, these arguments have been roundly addressed and rejected. *See*, *e.g.*, *Krause*, 2021 WL 4282700, at \*3 ("Defendant's arguments grounded in the First Amendment fare no better.").

**1.    <u>The First Amendment status of biographical information in Defendant's database is not at issue here.</u>**

Defendant hinges its First Amendment argument on the categorization of its website as a "director[y] of names, addresses, phone numbers, and other similar information." (Mot. at 16.) But the protected status of Defendant's online database—i.e., the information hidden behind

Defendant's subscription paywalls—is irrelevant. There is a key difference between visiting the InmatesSearcher website and flipping through the yellow pages: The *only* thing visitors to InmatesSearcher see after their initial search are Defendant's free preview advertisements, which display some information and invite users to pay for a subscription to the entire directory.

The distinction is borne out in Defendant's cases. *Vrdolyak v. Avvo, Inc.*, for example, concerned a website (Avvo.com) that provided a directory of attorneys. 206 F. Supp. 3d 1384, 1386 (N.D. Ill. 2016). The directory was free to use and, like a traditional yellow pages, included advertising on some, but not all, of its profile pages. *Id.* at 1386, 1388. The court therefore analogized Avvo.com to publications that have received First Amendment protection and use advertising next to protected speech. *Id.* at 1388-89. Because the defendant merely "publishe[d] non-commercial information and [sold] and [placed] advertisements within that information," its use of the plaintiff's identity on a profile page incurred no liability under IRPA. *Id.* at 1389.

Here, unlike Avvo.com or other online directories, Defendant's directory is *not* free to use but is hidden behind a paywall and only accessible to paying subscribers. Non-subscribers can only see the free preview advertising *for* that subscription. As *Gabiola v. Sarid* summed up, the information in the free previews "work[s] together with links directly to the checkout page" for the subscription packages and thus is designed to "generate[] revenue for defendant[]." 2017 WL 4264000, at *6 (N.D. Ill. Sept. 26, 2017) (discussing *Vrdolyak*); *accord Lukis*, 454 F. Supp. 3d at 762 (free previews with commercial hyperlinks "are alleged to be 'a commercial advertisement for a product, … goods, or services.'"). Defendant does not host ads alongside a directory; it shows ads asking users to *pay for access* to its directory. *See Krause*, 2021 WL 4282700, at *3. Nor is the speech in the free previews, as Defendant argues, "inextricably intertwined" with the speech in Defendant's "reports." (*See* Mot. at 17 (citations omitted).) That argument was explicitly

rejected in *Knapke*. 2021 WL 3510350, at *8 ("There is nothing showing that the Classmates-created advertisement using a yearbook photo is intertwined with otherwise fully protected speech.").

### 2.    The free previews are commercial speech that reference a specific product.

Because each of the free previews advertises its subscription service and Defendant has an economic motivation for placing the advertisements and including Plaintiff's identifying characteristics, the previews are commercial speech. *See Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-67 (1983) (characteristics of commercial speech); *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 517 (7th Cir. 2014) ("We have read *Bolger* as suggesting certain guideposts for classifying speech that contains both commercial and noncommercial elements; relevant considerations include 'whether: (1) the speech is an advertisement; (2) the speech refers to a specific product; and (3) the speaker has an economic motivation for the speech.'") (quoting *United States v. Benson*, 561 F.3d 718, 725 (7th Cir. 2009)). Courts evaluating analogous "free preview" advertising have reached the same conclusion. *See Kolebuck-Utz*, 2021 WL 1575219, at *3 ("Defendant's advertisements using Plaintiff's persona were, in fact, commercial speech."); *Lukis*, 2020 WL 6287369, at *9 ("The free previews, if anything, present a more difficult First Amendment case for Defendants than do the background reports because they 'propose a commercial transaction' and thus fall 'within the core notion of commercial speech.'"); *Krause*, 2021 WL 4282700, at *3 (holding free preview advertisements are commercial speech because they "not only propose but also allow users to complete a commercial transaction.").

Defendant suggests that its free previews are protected because they advertise content *potentially* protected by the First Amendment. (Mot. at 16-18.) Defendant primarily relies on *Bolger* for the proposition that "[w]hen speech 'advertises an activity' that is itself 'protected by

the First Amendment,' the advertisement must also be treated as fully protected speech." (Mot. at 17-18 (citing *Bolger*, 463 US. at 67 n. 14).) Defendant urges that this means that any advertisement for protected speech also is protected speech.[5]

Even if the pleadings established that Defendant's directory is protected (they do not), the argument fails. The Ninth Circuit rejected the same argument in *Charles v. City of Los Angeles*, 697 F.3d 1146, 1151-53 (9th Cir. 2010). In *Charles*, the City of Los Angeles notified a self-storage facility that its display of an *E! News* billboard was in violation of the city's sign code. *Id.* at 1149. Rejecting the facility's First Amendment defense, the Ninth Circuit wrote "[t]hat the underlying E! News program is itself entitled to full First Amendment protection does not cloak all advertisements for the program with noncommercial status; speech inviting the public to watch E! News is not inherently identical to the speech that constitutes the program itself." *Id.* at 1152; *see also Bolger*, 463 U.S. at 68 ("We have made clear that advertising which 'links a product to a current public debate' is not thereby entitled to the constitutional protection afforded noncommercial speech.").[6] The same conclusion is warranted here. Whatever the status of Defendant's underlying data, the free previews that appropriate Plaintiff's identity do nothing more than "*propose*[] a commercial transaction" for Defendant's *subscription packages* and are

---

[5]    *See also Esch v. Univ. Pictures Co.*, No. 6:09-cv-02258-JEO 2010 WL 5600989, at *6 (N.D. Ala. Nov. 2, 2010) (movie trailer part of "a protected expressive work" because it advertised the movie itself.); *Daly v. Viacom, Inc.* 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002) (adverts for television show where "advertising in question was merely to promote the program" itself, not, for instance, a cable subscription.).

[6]    *See also Groden v. Random House, Inc.*, 61 F.3d 1045, 1050-51 (2d Cir. 1995) (unauthorized quotation taken from plaintiff author's book in defendant's advertisement for separate book on assassination of JFK was an "incidental use" subject to First Amendment protection because the JFK assassination "obviously concern[s] a matter of significant public interest"); *Lane v. Random House, Inc.* 985 F. Supp. 141 1-2 (D.D.C.1995) (same, challenging same advertisement as was at issue in *Groden*); *Cher v. Forum Int 'l, Ltd.*, 692 F.2d 634, 637-39 (9th Cir. 1982) (California's right of publicity statute's "express exemption for news accounts" applies to magazine cover featuring interview with Cher, a public figure.).

regulable as commercial speech. *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 482 (1989). The case of *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n* is of no help either: the opinion addresses a completely different issue (*e.g.*, whether a publication loses its First Amendment status because it is advertised). 149 F.3d 679, 685 (7th Cir. 1998). Again, the database content is not at issue here.

Lastly, Defendant cites *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1231-32 (7th Cir. 1993) and *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) for the proposition that its "listings and 'preview' pages also are entitled to full First Amendment protection because the content of the alleged 'reports' is factual information available in the public domain . . . [and] '[t]he First Amendment creates a privilege to publish matters contained in public records." (Mot. at 18.) The point is a distraction. Even if the database were at issue (it is not), the Complaint alleges that Defendant gathers information from (among other sources) "private and public records." (Compl. ¶ 17.) In short, there is nothing pleaded to demonstrate that Defendant only uses information "available in the public domain," as Defendant suggests. Mot. at 18. Looking ahead, the opposite is likely true. In *Lukis*, for example, one of Defendant's competitor companies did not contest that its database included non-public information. *See Lukis*, 454 F. Supp. 3d at 763.

### 3.    As commercial speech, the free previews are subject to the limitations provided by IRPA.

Because the advertisements constitute commercial speech, "governmental burdens on [the advertisements] are scrutinized more leniently" than if they constituted noncommercial speech. *Jordan*, 743 F.3d at 515. To the extent commercial speech is protected at all by the First Amendment, it is subject to intermediate scrutiny, where it must directly advance a "substantial" government interest, and the regulation must not be more extensive than necessary to serve that interest. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S 557, 566 (1980).

The IRPA satisfies *Central Hudson*. First, the state interest here is substantial because the IRPA codified the common-law right of publicity, which has "[h]istorically [been one of] . . . four common-law invasion of privacy torts[.]" *Blair v. Nev. Landing P'ship*, 859 N.E.2d 1188, 1191 (Ill. App. Ct. 2006). And the "protection of individual privacy is a substantial government interest." *Wollschlaeger v. Governor*, 848 F.3d 1293, 1314 (11th Cir. 2017) (en banc). This is equally true from a property right perspective. *See Bosley v. Wildwett.com*, 310 F. Supp. 2d 914, 929 (N.D. Ohio 2004) (applying *Central Hudson* and holding that "[l]aws governing the right to publicity have a substantial interest in regulating commercial speech. Individuals have a property right in their own identity"). The "substantial interest" served by the IRPA also defeats Defendant's contention, (Mot. at 22), that its speech is not "misleading [or] related to unlawful activity." *See Cent. Hudson*, 447 U.S. at 564.

Second, the IRPA is tailored to serve these interests, which is self-evident given that the statute uses "essentially the same three elements that were required for a common-law claim of appropriation of likeness." *See Blair*, 859 N.E.2d at 1192; *see also* H.B. 1422, Tr. of House Debate, 90th Ill. Gen. Assem. (Apr. 24, 1997) at 225 ("This legislation will help protect entertainers, celebrities such as Michael Jordan, as well as other ordinary people . . . people who do not wish to have their identities used in the commercial manner without their consent."). The IRPA is also narrowly drawn because it only prohibits the commercial use of a person's identity without consent.[7] Here, Defendant is free to advertise its subscription packages or offer an ad-supplemented directory (like Avvo.com); it simply must do so without leveraging Illinoisans'

---

[7]    Nor does IRPA, as Defendant claims, "impose a severe burden on Truth Now's operation of a lawful business." (Mot. at 20.) While Defendant argues that "the best, and indeed only, way for Truth Now to sell its 'reports' is to tell a person running an internet search or visiting its website what 'reports' it sells[,]" (*id.*). Defendant could easily do so without running afoul of IRPA by listing the *types or categories* of information provided (*e.g.*, name, address, phone number, etc.) without misappropriating Plaintiff's or anybody else's likeness.

identities. Thus, the IRPA, both in general and as applied, passes intermediate scrutiny. *Cf. Bosley*, 310 F. Supp. 2d at 929 (applying *Central Hudson* factors and holding that "limitations imposed by the right to publicity would comport with the First Amendment."); *see also Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562 (1977) (holding that the First and Fourteenth Amendments do not immunize defendants from damages for alleged infringement of the right to publicity and that the right to publicity was constitutional and comports with the First Amendment); *Knapke*, 2021 WL 3510350, at *8 ("[T]he Right of Publicity Law directly and appropriately advances Ohio's substantial interest in enabling its citizens to protect the non-consensual commercial exploitation of their likeness without overbroadly prohibiting commercial speech.").

### E.    IRPA Does Not Violate the Dormant Commerce Clause.

Defendant raises a defense under the Dormant Commerce Clause, saying that the burdens imposed by the IRPA are excessive compared to the state's "*de minimis*" interest in "suppressing" InmatesSearcher's search results. (Mot. at 20-23.) This argument has also been universally rejected. *See Krause*, 2021 WL 4282700, at *4; *Knapke*, 2021 WL 3510350, at *10.

Initially, the argument is premature. *See Rivera*, 238 F. Supp. 3d at 1104 ("[T]he parties need to develop what Google's burdens of compliance would actually be under the [state law], if it were read in the way the Plaintiffs suggest."); *see also Krause*, 2021 WL 4282700, at *4 ("[T]his plainly is not an argument that can be resolved on the pleadings."). It also fails on the merits. First, the IRPA does not represent a "de minimis" state interest. Rather, it is significant, *supra* § III(D)(3), and not, as Defendant suggests, (Mot. at 21), limited to a "false endorsement[] of products." *Dobrowolski*, 2017 WL 3720170, at *8 ("[T]he act contains no endorsement requirement.").

Further, and contrary to Defendant's presentation (Mot. at 21-23), Plaintiff does not seek

to apply the IRPA "without geographical limitation." *See In re Facebook Biometric Info. Priv. Litig.*, 2018 WL 2197546, at *4 (N.D. Cal. May 14, 2018) (*quoting Healy v. Beer Inst., Inc.*, 491 U.S. 324, 332 (1989)). Rather, Plaintiff seeks to hold Defendant accountable for its Illinois-based conduct, including its collection and use of Illinois residents' identities in violation of an Illinois statute. *Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, at *7 (N.D. Ill. Sept. 15, 2017) (applying Illinois law to company obtaining biometric data from photos uploaded in Illinois does not offend Commerce Clause); *cf. Envt'l Def. Fund*, 986 F.2d at 531 (observing that the presumption against extraterritorial application does not apply when the at-issue conduct occurs within the regulating jurisdiction's borders). Defendant would prevent states from regulating any conduct that occurs on the Internet. (Mot. at 21-23.) Yet courts regularly reject Dormant Commerce Clause challenges to laws regulating Internet activity directed at a state's consumers. *See, e.g.*, *MaryCLE, LLC v. First Choice Internet, Inc.*, 890 A.2d 818, 840-45 (Md. Ct. Spec. App. 2006) (upholding Maryland anti-spam email law); *Ferguson v. Friendfinders, Inc.*, 94 Cal. App. 4th 1255, 1263-66 (1st Dist. 2002) (same; California); *State v. Heckel*, 24 P.3d 404, 412 (Wash. 2001) (same; Washington).

*In re Facebook Biometric Information Privacy Litigation*, 2018 WL 2197546, is instructive. There, the plaintiffs—all Illinois residents—alleged that their "biometric data was harvested" by Facebook and thus violated the Illinois Biometric Information Privacy Act ("BIPA"), which "requires private entities to provide notice and obtain consent when either 'biometric identifiers or biometric information' are at issue." *Id.* at *2, *6. Facebook argued that applying BIPA violated the Dormant Commerce Clause because some of its conduct occurred outside Illinois. *Id.* at *4. But the Court found that because Facebook's conduct had close ties to the state, "the application of BIPA to Illinois users [did] not have the impermissible 'practical effect' of regulating commerce wholly outside Illinois." *Id.* (quoting *Healy*, 491 U.S. at 332).

Instead, and similar to this case, the court observed that "[t]his lawsuit is under an Illinois state statute on behalf of Illinois residents who used Facebook in Illinois" and "[n]othing indicates that liability under BIPA would force Facebook to change its practices with respect to residents of other states." *Id.* This is apt here, given that Defendant knows that Plaintiff lives in Illinois and could easily exclude her—and other putative class members—from its free preview advertising. *See, e.g.*, *Knapke*, 2021 WL 3510350, at *10 ("Given the nature of the offending advertisement at issue – which [Truth Now] created – it would appear that [Truth Now] has the ability to simply alter the way in which it advertises its services to avoid the nonconsensual use of [Illinois residents'] personas.").

Defendant's cited cases are thus inapposite. *Am. Booksellers Found. v. Dean*, 342 F.3d 96 (2d Cir. 2003), for example, involved regulation of content made widely available on the Internet, where there was way to distinguish to whom the challenged statute would be applied. *See also Greater Los Angeles Agency on Deafness, Inc. v. CNN* 742 F.3d 414, 432-33 (9th Cir. 2014) (no Commerce Clause burden where law sought to be applied to "videos as they are accessed by California viewers" by a company that "could" engage in targeted activities); *SPGGC v. Blumenthal* 505 F.3d 183, 195 (2d Cir. 2007) (distinguishing *Am. Booksellers* on grounds that a defendant "has readily available" a way to distinguish viewers from different states). *Am. Librs. Ass'n v. Pataki*, 969 F. Supp. 160 (S.D.N.Y. 1997), *Am. Civil Liberties Union v. Johnson*, 194 F.3d 1149, 1162 (10th Cir. 1999), and *PSINet, Inc. v. Chapman*, 362 F.3d 227 (4th Cir. 2004) are inapposite for this same reason.

## IV.    CONCLUSION

For all the reasons discussed herein, Defendant's Motion should be denied.

Respectfully Submitted,

**SHERRY GAUL**,
individually and on behalf of all others similarly
situated,

Dated: January 28, 2022                 By: /s/ Benjamin S. Thomassen
                                            One of Plaintiff's Attorneys

Benjamin S. Thomassen
bthomassen@edelson.com
Michael W. Ovca
movca@edelson.com
Schuyler Ufkes
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Philip L. Fraietta
pfraietta@bursor.com
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, New York 10019
Tel: 646.837.7150
Fax: 212.989.9163

*Attorneys for Plaintiff and the putative class*