E-FILED
Wednesday, 24 August, 2022 04:02:48 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

SHERRY GAUL, individually and on    )
behalf of all others similarly situated,    )
   )
                 Plaintiff,    )
   )
                 v.    )      Case No. 21-cv-1314-JES-JEH
   )
TRUTH NOW, LLC,    )
   )
                 Defendant.    )

### <u>ORDER AND OPINION</u>

This matter is now before the Court on Defendant's Fed. R. Civ. P. 12(b)(2) and (b)(6) Motion to Dismiss and Plaintiff's Response. For the reasons indicated herein, Defendant's Motion to Dismiss (Doc. 7) is DENIED.

### BACKGROUND

The following facts are taken from Plaintiff's Complaint, which the Court accepts as true for the purposes of a motion to dismiss. *Bible v. United States Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015). Plaintiff files this case on behalf of herself and other Illinois residents similarly situated, asserting diversity of citizenship under 28 U.S.C. § 1332(d)(2)(A) between the Illinois putative class and Defendant Truth Now LLC, a company with its principal place of business in Glendale, California. Plaintiff asserts an action under the Illinois Right of Publicity Act ("IRPA") which prohibits the "use [of] an individual's identity for commercial purposes" without consent. 765 ILCS 1075/30(a). Plaintiff claims that Defendant violated the IRPA when it allegedly used her identity on its internet platform without her consent.

Plaintiff has pled that Defendant Truth Now operates a website which compiles information on individuals in the community and "sells subscription access to information about

individuals on inmatessearcher.com ("InmatesSearcher"). (Doc. 1).  Plaintiff asserts that

Defendant is not merely a conduit of information provided by third parties but, rather, actively

seeks out and compiles the information contained in its database. Plaintiff explains that when

visitors to the InmatesSearcher site enter an individual's first and last name, they are shown a

"free preview" of all individuals in the database with the same name. This preview includes

uniquely identifying information including age, city and state of residence, and the names of

family members. If a viewer clicks the "View Report" button, he is taken through several screens

which show that additional information is available, including criminal histories. To obtain this

information a viewer must create an account, disclosing first and last name, email address, and

telephone number. The viewer is then taken to Defendant's subscription service Pay Screen. If

the viewer wishes to purchase a report on the identified individual, the viewer must enter his

credit card information, pay $1.00 and agree to accept a free, 7-day unlimited trial. If not

cancelled within 7 days, the subscription automatically renews at the cost of $39.94 per month.

Plaintiff asserts, and Defendant does not dispute, that one cannot simply pay $1.00 and obtain a

report on the person being searched. Rather, the viewer must agree to the subscription service to

obtain this, and other reports.

       Plaintiff alleges that Defendant displaying her identity in this manner was an unconsented

public use of her identity in violation of the IRPA. Plaintiff also asserts that this information was

used for a commercial purpose, to induce viewers to pay for a monthly subscription service.

Defendant has moved to dismiss Plaintiff's complaint, asserting: the Court does not have

personal jurisdiction over Defendant; Defendant is immune from liability under the

Communications Decency Act, ("CDA"), 47 U.S.C. § 230; Plaintiff cannot state a prima facie

IRPA claim; Plaintiff's claim falls within the IRPA's statutory exemptions; Plaintiff's claim is

barred by the First Amendment; and Plaintiff's claim is barred by the Dormant Commerce Clause. *Regan v. City of Hammond*, 934 F.3d 700, 702 (7th Cir. 2019); *Healy v. Beer Inst.*, 491 U.S. 324, 326 n.1 (1989).

## LEGAL STANDARDS

A Rule 12(b)(2) motion to dismiss challenges whether the Court has jurisdiction over a party. *MG Design Associates v. Costar Realty*, 224 F. Supp. 3d 621, 627 (N.D. Ill. 2016), *on reconsideration in part,* 267 F. Supp. 3d 1000 (N.D. Ill. 2017). When the jurisdictional issue is raised, it is the plaintiff who bears the burden of establishing whether defendant is subject to the court's personal jurisdiction. *See Brook v. McCormley*, 873 F.3d 549, 551–52. (7th Cir. 2017); *Purdue v. Sanofi-Synthelabo*, 338 F.3d 773, 782 (7th Cir. 2003). The Court is to "read the complaint liberally, in its entirety, and with every inference drawn in favor of" the plaintiff. *MG Design Associates*, 224 F. Supp. 3d at 627 (quoting *Cent. States v. Phencorp*, 440 F.3d 870, 878 (7th Cir. 2006)). If the court considers this issue on the pleadings, without evidentiary hearing, the plaintiff need only make out a *prima facie* case of personal jurisdiction." *N. Grain Mktg. v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) (internal quotation marks omitted). If, however, the defendant submits evidence refuting the exercise of jurisdiction, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 783. Any dispute concerning relevant facts is resolved in the plaintiff's favor. *Id.* 782–83.

A motion to dismiss under 12(b)(6) tests the sufficiency of a complaint, but not the merits of a case. *McReynolds v. Merrill Lynch*, 694 F.3d 873, 878 (7th Cir. 2012); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a motion to dismiss, the complaint must describe the claim in sufficient detail to put the defendants on notice as to the nature of the

claim and its bases, and it must plausibly suggest that the plaintiff has a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). When considering such motions, courts "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagovich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

A court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 679. Although a facially plausible complaint need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. These requirements ensure that a defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

## DISCUSSION

### The Court Has Personal Jurisdiction Over Defendant

As noted, here Plaintiff bears the burden of establishing whether defendant is subject to the court's personal jurisdiction. *Brook*, 873 F.3d at 552. "A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction." *Id.* at 779 (citing *Hyatt Int'l v. Coco,* 302 F.3d 707, 713 (7th Cir. 2002)). Determining whether a state has personal jurisdiction over a defendant requires a "a two-step inquiry." The first is whether the law of the forum state provides for *in personam*

jurisdiction under the circumstances. The second is whether asserting such jurisdiction would comply with Fourteenth Amendment due process. *Id*. at 779. Because "the Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause . . . the state statutory and federal constitutional inquiries merge.'" *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (citing 735 ILCS 5/2-209). As a result, the Court will review this issue to determine whether Plaintiff has pled enough to comport with due process.

Plaintiff is asserting that the Court has specific jurisdiction over Defendant, rather than general jurisdiction which requires a showing that defendant had "continuous and systematic general business contacts" with the forum. *Purdue*, 338 F.3d at 787 (citing *Helicopteros Nacionales v. Hall,* 466 U.S. 408, 416 (1984)). Absent continuous and systematic contacts, a plaintiff may assert specific personal jurisdiction provided there are sufficient minimum contacts between the forum state and non-resident defendant. "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457 (1940)).

In this inquiry, the Court must determine whether the non-resident defendant "purposefully avail[ed] [itself]of the privilege of conducting activities within the forum state. *Shaffer v. Heitner,* 433 U.S. 186, 188 (1977). The Court must consider "foreseeability" from the defendant's perspective; whether "the defendant retains sufficient, albeit minimal, ability to structure its activities so that it can reasonably anticipate the jurisdictions in which it will be required to answer for its conduct." *Purdue*, 338 F.3d at 780. "This requirement ensures that a

5

defendant's amenability to jurisdiction is not based on fortuitous contacts, but on contacts that demonstrate a real relationship with the state with respect to the transaction at issue." *Id.* (citing *Burger King Cor. v. Rudzewicz*, 471 U.S. 462 (1985)). It is not necessary, however, that Defendant enter the jurisdiction while conducting business there. *Id.* at 476 (finding defendant could not avoid the Court's exercise of personal jurisdiction where defendant transacted "a substantial amount of business" by mail and wire even though not physically entering the forum state).

Specific jurisdiction may be predicated upon a Defendant having "purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id.* at 472-73 (internal citations omitted). In *Burger King*, the Supreme Court noted that non-resident defendants who reach out to effect relationships and contractual obligations with state residents "are subject to regulation and sanctions in the other State for the consequences of their activities." *Id.* at 473. The defendant must, himself, have created a "'substantial connection' with the forum State." *Id.* at 475.

Defendant cites caselaw to support that merely operating an interactive website which may be accessed in the forum state does not confer specific personal jurisdiction. *Advanced Tactical*, *v. Real Action Paintball*, 751 F.3d 796, 801–03 (7th Cir. 2014); *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011). Defendant claims that Plaintiff cannot establish personal jurisdiction for Defendant's alleged actions in searching and obtaining state residents' identifying information where she has not pled that Defendant specifically targeted the State of Illinois. Defendant advances that its nation-wide database only "incidentally" reached Illinois as that is the nature of an interactive website.

6

Plaintiff responds that she has sufficiently pled Defendant's intentional contacts with Illinois where she has alleged that Defendant seeks out and compiles identifying information on Illinois residents, profiles this information in free previews and uses it to induce Illinois residents to buy a monthly subscription service. Plaintiff asserts this establishes both that Defendant "purposefully directed" its conduct to Illinois, and that the alleged injuries are related to the conduct. *See Burger King,* 471 U.S. at 472-73.

In support of her claim to specific jurisdiction, Plaintiff cites the recent Seventh Circuit opinion in *Lukis v. Whitepages Inc*., 454 F. Supp. 3d 746, *reconsideration denied,* 542 F. Supp. 3d 831 (N.D. Ill. 2020). There, the court considered a challenge to personal jurisdiction under similar facts. In *Lukis*, as here, the defendant website used free previews containing the identifying information of Illinois residents to induce viewers to purchase a subscription service. The Seventh Circuit found that defendant's conduct was purposefully directed toward Illinois where it was alleged that defendant engaged in repeated, intentional conduct directed at Illinois and its residents—using their personal information, derived from [Illinois] databases. This conduct was found to have "demonstrate[d] a real relationship with" Illinois. *Id*. at 758-59. The court also found that the conduct gave rise to the claimed injury where defendants "specifically aimed their tortious conduct at [the plaintiff] ... in Illinois with the knowledge that he lived, worked, and would suffer the brunt of the injury there[.]" *Id*. at 758.

While Defendant heavily relies on *Advanced Tactical*, a trademark infringement case, it is not particularly on point. In *Advanced Tactical*, the Appellate Court reversed the District Court's grant of injunctive relief, finding that the District Court did not have personal jurisdiction over defendant so as to have granted the relief. There, an evidentiary hearing was conducted with plaintiff presenting evidence that the defendant competitor sent two email blasts

to plaintiff's Indiana customers, misled plaintiff's Indiana customers into buying the competitor's product, and compiled an email list of plaintiff's Indiana customers through its interactive website.

The Seventh Circuit conducted a de novo examination of the jurisdictional issue, finding that defendant's conduct did not satisfy the required minimum contacts for the exercise of jurisdiction. *Id*. at 801. It found plaintiff had not adequately established that it suffered injury due to the competitor's forum-directed activity. "For a State to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum State." *Id.* 801 (quoting *Walden v. Fiore,* 571 U.S. 277 (2014)) (emphasis added). In other words, the court did not find that the allegedly infringing conduct was specifically directed to Indiana where the few lost sales identified in evidence could not be linked to Indiana-related conduct. *See id*. ("it is unlikely that those few sales alone, without some evidence linking them to the allegedly tortious activity, would make jurisdiction proper.")

While Defendant relied primarily on *Advanced Tactical*, the findings in that case were made at evidentiary hearing, not on the pleadings. Defendant neither mentions nor attempts to distinguish the *Lukis* court's finding of personal jurisdiction on the pleadings where an evidentiary hearing was not conducted. Consistent with *Lukis*, the Court finds Plaintiff has adequately pled that Defendant purposefully directed its allegedly unlawful conduct to Illinois and its citizens. This is so, as at the pleadings stage a plaintiff need only make out a prima facie case of personal jurisdiction." *Id.* at 756. Plaintiff has pled enough to overcome Defendant's Rule 12(b)(2) motion to dismiss.

<u>Defendant is Not Entitled to Immunity under the Communications Decency Act</u>

Defendant alleges that the complaint must be dismissed under the CDA which states in relevant part: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). *See Huon v. Denton*, 841 F.3d 733, 742 (7th Cir. 2016) (an entity "cannot be considered the publisher of information simply because the company hosts an online forum for third-party users to submit comments,") and noting "that § 230(c) preempts contrary state law."). Defendant asserts that as it does not create the information on its website, only publishing that which is publicly available, it is immune from liability under the CDA.

Defendant cites *Callahan v. Ancestry.com,* No. 20-8437, 2021 WL 783524, at *6 (N.D. Cal. Mar. 1, 2021) to support its claim to CDA immunity. There, the Federal Court for the Northern District of California found Defendant's actions in extracting information from donated yearbooks, photographs, etc., and publishing them on an interactive website was only "a publisher's traditional editorial functions that do not transform an individual into a content provider within the meaning of § 230." *Id*. Defendant also cites a case from the Eastern District of Virginia, *Henderson v. Source for Public Data*, No. 20-294, 2021 WL 2003550, at **3-6 (E.D. Va. May 19, 2021) and other non-controlling authority from other circuits.

In response, Plaintiff cites the relatively recent decision in *Lukis*, as well as other cases from this circuit, declining to apply CDA immunity to IRPA litigation. Under strikingly similar circumstances, the court in *Lukis* found that a defendant which had allegedly actively compiled and collated Plaintiff's identifying information from several sources, was not a passive conduit of the information for purposes of CDA immunity. *See Lukis*, 454 F. Supp. 3d at 763 (citing *Huon*, 841 F.3d at 742 (finding that the CDA did not protect defendant who '"edited, shaped,

and choreographed' the content of the comments it published online.")) *see also Krause v. RocketReach*, 561 F. Supp. 3d 778, 785 (N.D. Ill. 2021) (citing *Lukis* and declining to apply CDA immunity at motion to dismiss stage where it was alleged that defendant "curated" the subject information.)

In *Bonilla v. Ancestry.com*, 574 F. Supp. 3d 582, 592 (N.D. Ill. 2021), the court stated "[b]ecause affirmative defenses such as CDA immunity frequently turn on facts not before the court at the pleading stage, dismissal is appropriate only when the factual allegations in the complaint unambiguously establish all the elements of the defense." (citing *Siegel v. Zoominfo Techs.*, No. 21-2031, 2021 WL 4306148, at *4 (N.D. Ill. Sept. 22, 2021). The Court does not find that Plaintiff's pleading unambiguously establishes Defendant's claim to CDA immunity. Accordingly, Defendant's motion to dismiss premised on the CDA is DENIED.

<u>Plaintiff States a Claim Under the Illinois Right to Publicity Act</u>

The IRPA recognizes an individual's "right to control and to choose whether and how to use [their] individual identity for commercial purposes." 765 ILCS 1075/10. To plead a prima facie case, Plaintiff must establish that her identity was used, without her consent, for a commercial purpose. *Vrdolyak v. Avvo*, *Inc*., 2016 F. Supp. 3d 1384, 1386 (N.D. Ill. 2016) (citation omitted); 765 ILCS 1075/30(a). The statute defines "identity" as "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." "Commercial purpose" is defined in part, as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services . . . ." 765 ILCS 1075/5.

Defendant does not dispute that the information on its website went to Plaintiff's "identity" as contemplated under the IRPA. *See Lukis,* 454 F. Supp. 3d at 761 (finding that plaintiff's name with middle initial, age range, telephone numbers, address, and name of relative displayed in a free preview amounted to his "identity"). Defendant asserts, however, that Plaintiff has not pled that anyone searched her name or saw the free preview in which she was featured.

"Public use" under the IRPA "means that some substantial number of people saw or were exposed to a person's identity." *Fischer v. Instant Checkmate LLC*, No. 19-4892, 2022 WL 971479, at *10 (N.D. Ill. Mar. 31, 2022); *see also Trannel v. Prairie Ridge Media*, 987 N.E.2d 923, 929 (Ill. App. Ct. 2013) (defining "public" as "the 'aggregate of the citizens' or 'everybody' or the 'people at large' or the 'community at large.'"). Plaintiff does not particularly plead that the public at large viewed the free preview information attached to her name, but cites caselaw to support that at the pleadings stage, she need not identify those who searched her name. *See Siegel*, 2021 WL 4306148, at *3–4 (rejecting defendant's request to dismiss because plaintiff had not identified those who viewed her information). *See also Krause,* 561 F. Supp. 3d at 782 (finding it was sufficient for plaintiff to plead defendant's use of her identity on its database without identifying any who viewed it.)

In addition, Plaintiff successfully pleads a "holding out" under the IRPA. That is, "the representation—of an individual's identity on or in connection with certain activities." *See Trannel*, 987 N.E.2d at 930 (placing plaintiffs' consented-to magazine photograph in a non-consented media kit was an actionable holding out, notwithstanding that the kit was only sent to 31 advertisers). *See also Fischer,* 2022 WL 971479, at *10 ("holding out does *not* require that the individual's identity was seen by others."). The Court finds that Plaintiff has sufficiently pled

that Defendant's use of her identity on its website satisfies the "public use" and "holding out" requirements of IRPA.

Defendant further disputes the sufficiency of the IRPA claim, asserting Plaintiff has failed to establish that her identity was used for a commercial purpose. Defendant claims that the free previews did not advertise a separate product but, rather, were part and parcel of the product being offered, a report of Plaintiff's identifying information. In support, Defendant cites *Dobrowolski v. Intelius,* No. 17-1406, 2018 WL 11185289, at *1 (N.D. Ill. May 21, 2018). There, plaintiff's name was used on defendant's marketing page which displayed a listing of others who matched the name entered by the viewer. A preview was provided which gave some information as to each individual, with the opportunity to purchase a report as to each. There, the court found that the plaintiffs' identities were not used for a commercial purpose, to promote a product, but rather to directly sell plaintiffs' identifying information. *See id*. at *3 ("plaintiffs' identities are part of the product offered for sale.").

Defendant also cites a series of other right of publicity cases to support that it is permissible to use an individual's identity when that identity is inexorably linked to the product itself. *See Thompson v. Getty Images (US), Inc.*, No. 13-1063, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013) (a photograph is not used for a commercial purpose if shown to someone who is contemplating buying that photograph). Defendant also cites *Nieman v. Versuslaw*, No. 12-3104, 2012 WL 3201931 (C.D. Ill. Aug. 3, 2012), *aff'd*, 512 F. App'x 635 (7th Cir. 2013), where users could enter a name into defendant's website and, for a fee, obtain records as to the named individual. The court found that this did not violate the IRPA as the plaintiff's "name is not being held out or used to entice anyone to buy a product." *Id*. at *4.

12

Plaintiff distinguishes the *Dobrowolski* line of cases, pointing out that they only concerned circumstances where the image of a product was used to sell the product itself, as a photo of a book being used to sell that book. (Doc. 15 at 20). Plaintiff asserts here, her identity was not used to sell a more detailed report of her information but, rather, to sell a subscription service. Plaintiff cites *Lukis*, 454 F. Supp. 3d 761, where a viewer searching an individual by name could only obtain a more detailed report by purchasing defendant's monthly subscription package. The court determined that plaintiff's identity "was not part and parcel of the entire product or service being advertised...," distinguishing *Dobrowolski*. The *Lukis* court characterized this as "a textbook example under the IRPA of using a person's identity for a commercial purpose." *Id.* at 760. The Court agrees, as the Plaintiff here has similarly pled that anyone entering her name into Defendant's database would be solicited to purchase a subscription service to obtain additional information on Plaintiff and others.

Plaintiff has successfully pled that an individual searching her name could not obtain a detailed report of her "identity" without subscribing to Defendant's full database services, even if only for a $1.00 free trial which would, after seven days, revert to a monthly billing. As a result, her identity was used for a commercial purpose, to promote the service, not merely to offer a more detailed report of Plaintiff. This clearly distinguishes this case from those Defendant cites.

<u>IRPA Statutory Exemptions 765 ILCS 1075/35 (b)(2), and (b)(4) Do Not Apply</u>

As noted, the Court has found the free previews in question were used for a commercial purpose as defined under the IRPA. There are several statutory exemptions to the IRPA which may serve to shield conduct from IRPA liability. Defendant cites two of these exemptions, § 35(b)(2) and (b)(4).

13

Section 35(b)(2) exempts from liability the "use of an individual's identity for non-commercial purposes, including any news, public affairs, or sports broadcast or account, or any political campaign." It must be noted that § 35(b)(2) "non-commercial purposes" is not the flip side of "commercial purpose" as defined in the body of the IRPA. Rather, § 35(b)(2) non-commercial purposes "alludes to federal First Amendment doctrine and its concept of noncommercial speech." *Lukis v. Whitepages, Inc.*, 542 F. Supp. 3d 831, 842 (2020). As the IRPA and § 35(b)(2) standards differ, the use of a person's identity could be deemed commercial under the IRPA, but still non-commercial speech under the First Amendment so as to qualify for the exemption. *Id*. at 842 (citing *Best v. Berard*, 776 F. Supp. 2d 752, 756, 759 (N.D. Ill. 2011)). As a result, the Court's finding that the free previews had a commercial purpose under the IRPA does not end the matter.

Defendant asserts that the free previews come under the news and public affairs exemption, if the Court broadly construes § 35(b)(2) to cover "any subject of public interest." (Doc. 8 at 21) (citing *Bogie v. Rosenberg*, 705 F.3d 603, 614 (7th Cir. 2013)). Defendant claims that the mere fact that it derived an economic benefit from the free previews does not change their non-commercial purpose. In support, Defendant cites *Life After Hate, v. Free Radicals Project*, No. 18-6967, 2020 WL 1903956, at *6 (N.D. Ill. Apr. 16, 2020) where a founder of Life After Hate ("LAH") alleged that LAH had appropriated his name or likeness after he left the organization when it broadcast fundraising videos he had previously recorded. LAH responded that the videos were public service announcements which came under the "news or public affairs" § 35(b)(2) exemption. The court agreed, finding that LAH was not liable under the IRPA even though the videos were broadcast for a commercial purpose, fundraising.

14

The Court does not find this case analogous, particularly where Defendant does not make a case as to why the Court should find that the identifying information in the free previews was "news or public affairs." The Court finds the decision in *Lukis* more applicable, as there, previews perhaps identical to the ones at issue here, were found to have a commercial purpose. While Defendant asserts that *Lukis* should not apply, it offers only an underdeveloped argument, reiterating the already rejected defense that Plaintiff's identity was part of the product being sold.

Defendant also cites the § 35(b)(4) which exempts "promotional materials, advertisements, or commercial announcements . . . " from regulation under the IRPA. Defendant does not, however, further expand or offer support for this position which appears contrary to its claims that the free previews are *not* commercial advertisements. *See Gross v. Town of Cicero*, 619 F.3d 697, 705 (7th Cir. 2010) (parties typically waive cursory arguments or arguments that are not supported by pertinent authority).

<u>The First Amendment Does Not Bar Plaintiff's IRPA Claims</u>

Thus far, the Court has found that Plaintiff has successfully pled that her identity was used for a commercial purpose under the IRPA; and that the free previews did not qualify as non-commercial speech for the § 35(b)(2) exemption derived from a First Amendment standard. The Court now considers Defendant's additional argument that the free previews represent constitutionally protected free speech, a potential defense which may yet defeat the IRPA claim. *Best*, 776 F. Supp. 2d at 756-57 ("The First Amendment can serve as a defense to a civil [IRPA] claim . . . .").

"[T]he First Amendment greatly circumscribes the right even of a private figure to obtain damages for the publication of newsworthy facts about him . . . ." *Lukis*, 542 F. Supp. 3d at 839 (quoting *Haynes v. Alfred A. Knopf*, 8 F.3d 1222, 1232 (7th Cir. 1993)). It is widely recognized

that non-commercial free speech is entitled to broad First Amendment protections while commercial speech is "scrutinized more leniently." *Jordan v. Jewel Food Stores*, 743 F.3d 509, 515 (7th Cir. 2014). Commercial speech is not held to the same constitutional standard because it often concerns matters already subject to governmental regulation. *Id.* (quoting *Lorillard Tobacco v. Reilly,* 533 U.S. 525, 554 (2001)). In addition, as already subject to such regulation, commercial speech is less likely to be chilled than might non-commercial speech. *Id.*

Defendant claims that the information provided in the free previews – names, ages, addresses, names of relatives, and phone numbers is protected non-commercial speech, merely a republication of information already in the public domain. *See* (Doc. 8 at 25) (citing *Haynes*, 8 F.3d at 1231–32 ("[T]he First Amendment creates a privilege to publish matters contained in public records even if publication would offend the sensibilities of a reasonable person.") Defendant also cites *Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal. 3d 860, 872 (1979) (finding that an individual's objection to the dissemination of his biographical information did not "outweigh the value of [the publisher's] free expression.") Defendant asserts the mere fact that there was a profit to be gained from the republication does not convert the non-commercial speech to commercial speech. *Vrdolyak*, 206 F. Supp. 3d at 13586-1388 (finding that non-commercial public information in a directory did not become commercial speech merely because ads were posted on the page.

Plaintiff denies that Defendant's interactive website is analogous to a free directory or yellow pages, as a visitor to the site has only limited access until he pays for a subscription. Plaintiff also distinguishes *Vrdolyak*, asserting that the directory there was free to the public and in the nature of a traditional yellow pages, while Defendant's directory was fully accessible only to paying subscribers. Plaintiff claims that the free previews which lead the viewer to a

subscription payment page, serve to "'propose a commercial transaction' and thus fall 'within the core notion of commercial speech.'" (Doc. 15 at 26) (citing *Lukis*, 542 F. Supp. 3d at 844). *See Krause*, 2021 WL 4282700, at *3 (holding free preview advertisements are commercial speech because they "not only propose but also allow users to complete a commercial transaction.")

Defendant makes the further argument that, as the reports are non-commercial public information, the free previews excerpted from them are also non-commercial. Defendant does not, however, conduct an analysis under *Bolger v. Youngs Drug Prods.*, 463 U.S. 60, 66-67 (1983) which identified pertinent considerations for classifying speech that potentially contains both commercial and non-commercial elements. *See Lukis*, 542 F. Supp. 3d at 843-44 (finding "conclusory" defendant's First Amendment claim that its free previews were non-commercial speech where it did not discuss *Bolger*).

For her part, Plaintiff addresses the elements identified in *Bolger*, whether: "(1) the speech is an advertisement; (2) the speech refers to a specific product; and (3) the speaker has an economic motivation for the speech." *Id*. at 843. Plaintiff cites cases to support that free previews of this type are an advertisement and that they refer to a specific product, Defendant's subscription services. Plaintiff also sufficiently establishes, at least for pleadings purposes, that Defendant had an economic interest in the free previews.

Plaintiff also disputes that the reports and previews contained publicly available information so as to be non-commercial in nature. Plaintiff notes that she has affirmatively pled that Defendant gathers information from both "private and public records." (Doc. 15 at 28). *See Lukis*, 542 F. Supp. 3d at 841 (finding that cellphone numbers and email addresses in free previews were "purely private information").

Defendant rests on its position that the free previews are non-commercial speech, asserting that as a result, the previews are entitled to full First Amendment protection. If this were the case, the IRPA could be applied here only upon a strict scrutiny analysis. Plaintiff contests this, asserting the free previews are commercial speech, requiring only intermediate scrutiny. *See Vrdolyak.*, 206 F. Supp. 3d at 1387 ("commercial speech is entitled only to intermediate scrutiny, and as such may be subject to the IRPA"). The Court is persuaded and finds that the identifying information in the free previews amounted to commercial speech under the First Amendment, as it was used as an advertisement to induce viewers to purchase Defendant's subscription services.

The Court next considers whether First Amendment intermediate scrutiny militates against applying the IRPA in this case. Defendant has postured its arguments solely on a strict scrutiny standard and does not discuss intermediate scrutiny, while Plaintiff does. Plaintiff cites *Cent. Hudson Gas & Elec. v. Pub. Serv. Comm'n*, 447 U.S 557, 566 (1980), which established that to survive intermediate scrutiny a regulation must "directly advance a 'substantial' government interest, and the regulation must not be more extensive than necessary to serve that interest." (Doc. 15 at 28).

Plaintiff asserts that as the IRPA serves to protect individual privacy, it supports a substantial government interest. *Id*. at 29 (citing *Wollschlaeger v. Governor*, 848 F.3d 1293, 1314 (11th Cir. 2017) (en banc)). Plaintiff also contends that the IRPA is narrowly drawn as it only limits the unconsented commercial use of an individual's identity. So, while Defendant is free to advertise its subscription services, it may not do so by appropriating Illinoisans' identities without consent. The Court agrees, finding that the First Amendment does not bar Plaintiff's IRPA claims.

The Dormant Commerce Clause Does Not Bar Plaintiff's Claim

Defendant's final argument is that it would run afoul of the "dormant" Commerce Clause to apply the IRPA in this case. "The commerce clause gives Congress the power to regulate commerce among the states. U.S. Const. Article I, § 8, cl. 3[,]" something which "presumes a national market free from local legislation that discriminates in favor of local interests." The corollary is a "corresponding restraint on the power of state and local governments to regulate that commerce….the dormant commerce clause." *Regan*, 934 F.3d at 702 (internal citations omitted); *see Healy*, 491 U.S. at 326 n.1. ("This Court long has recognized that this affirmative grant of authority to Congress also encompasses an implicit or 'dormant' limitation on the authority of the States to enact legislation affecting interstate commerce."). The critical consideration is whether the "practical effect of the regulation is to control conduct beyond the boundaries of the State." *Id*. at 336 (citing *Brown–Forman v. New York State Liquor Authority*, 476 U.S. 573, 579 (1986)).

Defendant, without citing support, characterizes the IRPA as limited to "protecting against false endorsements of products," something which it deems a "negligible" state interest. (Doc. 8 at 28). Defendant opines that applying the IRPA here would unduly burden its ability to engage in interstate commerce and would be "wholly out of proportion to any *de minimus* state interest in suppressing this speech." *Id*.

Defendant asserts that few states have recognized a right of publicity and those which do construe it narrowly. Defendant claims that if the IRPA were to be applied, Defendant would be required to obtain consent from any Illinois resident having the same name as that being searched anywhere in the country. It is Defendant's position that applying the IRPA "would have the effect of 'exalt[ing] the public policy of [Illinois] over that of another state.'" (Doc. 8 at 30).

Plaintiff responds that the argument is premature, denies that the IRPA represents a *de minimis* state interest, and denies that the IRPA is meant only to prevent the false endorsement of products. Plaintiff notes, further, that "courts regularly reject Dormant Commerce Clause challenges to laws regulating Internet activity directed at a state's consumers." (Doc. 15 at 31) (collecting cases). *See Krause*, 561 F. Supp. 3d at 785–86 ("The fact that a state or municipal law affects interstate commerce in some way is by itself insufficient to render the law suspect under the commerce clause, as almost any local regulation is bound to touch upon interstate commerce") (citing *Regan*, 934 F.3d at 702).

Regardless, this issue is not amendable to disposition at the pleadings stage. *See id.* 785–86 (declining to consider the Dormant Commerce Clause on a motion to dismiss). "The complaint simply does not plead the kinds of facts necessary to determine whether the interests served by application of the IRPA to the claim here outweigh the burden, if any, on interstate commerce." *Id.* at 786. The Court agrees. Defendant's motion to dismiss is DENIED as to this claim.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (Doc. 7) is DENIED in its entirety.

ENTERED this 24th  day of August, 2022.


                              ___s/James E. Shadid___
                              JAMES E. SHADID
                              UNITED STATES DISTRICT JUDGE